UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

OREGON WASHINGTON HEALTH
NETWORK, an Oregon public benefit
company,

                    Plaintiff,

    v.

INSPIRED BUSINESS CONNECTIONS
LLC, an Oregon corporation; and HELEN E.
LARSON, an Oregon individual,

                    Defendants.

Case No. 2:23-cv-00897-HL

**FINDINGS AND
RECOMMENDATION**

_____

**HALLMAN, Magistrate Judge:**

    Plaintiff Oregon Washington Health Network ("Plaintiff") moves for entry of default

judgment against Inspired Business Connections, LLC ("IBC"), and its owner, Helen E. Larson

("Larson") (collectively "Defendants"). ECF 13. This Court held a hearing on this matter on May

16, 2024. ECF 19. For reasons set forth below, Plaintiff's Motion for Default Judgment should

be GRANTED and judgment should be entered in favor of Plaintiff and against Defendants for $10,000.00 in damages, $4,147.50 in attorney fees, and $402.00 in costs.

## BACKGROUND

Plaintiff is a public benefit company providing health and health-related services to primarily low-income and at-risk residents in the Pendleton area. Compl., ECF 1, ¶6. Larson is a bookkeeper and owner of IBC. Compl. ¶7.

IBC was the bookkeeping service company hired to perform bookkeeping and tax related services for Plaintiff until Plaintiff stopped using its services in early 2023. Compl. ¶7, ¶9. The parties had an "oral and/or written" contract for these services. Compl. ¶7. This contract involved Defendants providing bookkeeping services to Plaintiff, and Plaintiff receiving necessary documents and information for its ongoing public benefit operations. Compl. ¶13. As a result, Defendants had access to and possession of Plaintiff's confidential, proprietary, and trade secret information. Compl. ¶7.

After IBC ceased providing bookkeeping and tax services in early 2023, Plaintiff made numerous attempts to obtain tax and other records in the possession of IBC. Compl. ¶8, ¶17; Ex. 1. Defendants "either failed to properly complete and file certain necessary tax documents and/or have continually refused to provide copies of such documents, including employee W2s and 1099s, to Plaintiff despite numerous requests and attempts to obtain the documents." Compl. ¶8. In addition, IBC and Larson have kept Plaintiff's "operating financial and budget information, revenues and expenditures records, grant/donor information, contractor and employee tax information and records and data including names and addresses and social security numbers, and Plaintiff's protected confidential and proprietary company information." Compl. ¶17. This failure was intentional and in retaliation for Plaintiff's decision to stop using IBC's services.

Compl. ¶9. Plaintiff's Executive Director, Jenna Stensrud ("Stensrud"), "attempted for many months to obtain the missing bookkeeping and tax documents and information from Defendants, but was stonewalled throughout." Stensrud Decl., ECF 15.

Plaintiff filed this action on June 20, 2023. Plaintiff alleges four claims for relief: (1) breach of contract; Pl. Compl. ¶¶12-15; (2) violations of Oregon's trade secrets act and the federal trade secrets act, Pl. Compl. ¶¶16-19; (3) tortious interference with economic relations; Pl. Compl. ¶¶20-22; and (4) conversion; Pl. Compl. ¶¶23-29. The complaint sought not less than $140,000.00 in compensatory damages, as well as attorney fees and injunctive relief. Compl. p. 8.

Defendants failed to appear in this action and this Court issued an order of default. ECF 11. Plaintiff now moves for a judgment of default seeking $10,000.00 in compensatory damages on all claims for relief, and $6,147.50 in attorney fees and anticipated costs to collect on this judgment, and $402.00 in costs. Pl. Mot. Default Judgment ("Mot.") p. 4.[1] This Court held a hearing in this matter on May 16, 2024. ECF 19.

## LEGAL STANDARDS

Under FED. R. CIV. P. 55(a), the clerk of the court is required to enter an order of default if a party against whom affirmative relief is sought has failed to timely plead or otherwise defend an action. *See* FED. R. CIV. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). For the purposes of default judgment, all

---

[1] Plaintiff's initial motion sought $5000.00 in compensatory damages. Mot. 4. As discussed below, at the hearing, Plaintiff submitted evidence that the amount was "at least" $10,000.00. In addition, Plaintiff increased the amount of attorney fees requested based on additional work performed on the case through the date of the hearing.

well-pleaded allegations in the complaint, except those relating to damages, are assumed to be true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (providing the general rule that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true").

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). When the plaintiff's claim is not for a sum certain or a sum that can be made certain by computation, the court may conduct hearings to effectuate a judgment as needed to conduct an accounting, determine damages, establish the truth of any allegation by evidence, or investigate any other matter. FED. R. CIV. P. 55(b)(2)(A-D). A sum is certain when "no doubt remains as to the amount to which a plaintiff is entitled as a result of the defendant's default." *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 929 (9th Cir. 2004); *see Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (default judgment for money may be entered without a hearing if the amount claimed is a liquidated sum or capable of mathematical calculation). "It is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler,* 650 F.2d at 1161.

"Rule 55 provides that 'after the clerk's entry of default against a defendant, a court may enter default judgment against that defendant.'" *Glacier Films (USA), Inc., v. Tenorio*, Case No. 3:15-cv-01729-SB, 2016 WL 3766465, at *1 (D. Or. June 22, 2016) (quoting *FirstBank P.R. v. Jaymo Properties, LLC*, 379 F. App'x 166, 170 (3d Cir. 2010)). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising this discretion, courts in this circuit consider the factors

discussed in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986). *Glacier Films*, 2016 WL 3766465, at *1. The *Eitel* factors are (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the operative complaint; (4) the sum of money at stake in the litigation; (5) the possibility of dispute over material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72. The court's analysis begins with "the general rule that default judgments are ordinarily disfavored." *Id.* at 1472 (citation omitted).

## DISCUSSION

### I.    Procedural Requirements

This Court first considers whether Plaintiff has complied with all necessary procedural requirements to obtain a default judgment.

As a preliminary matter, this Court is satisfied that it has personal jurisdiction over Defendants based on the facts alleged in the record. A district court "has an affirmative duty" to determine whether it has subject matter jurisdiction and personal jurisdiction over the defendant before entering a default judgment. *Allstream Bus. US, LLC v. Carrier Network Sols., LLC*, Case No. 3:20-cv-01970-IM, 2021 WL 3488086, at *3 (D. Or. Aug. 9, 2021); *In re Tuli*, 172 F.3d 707, 713 (9th Cir. 1999). The court "may dismiss an action *sua sponte*" where personal jurisdiction does not exist. *Id.* But it must first give the plaintiff moving for a default judgment the opportunity to show facts supporting the exercise of personal jurisdiction. *Id.* at 712-13.

This Court has subject matter jurisdiction over Plaintiff's claims under the Defend Trade Secrets Act, 18 U.S.C. 1836 *et. seq*. pursuant to 28 U.S.C.1331 and it has supplemental jurisdiction over Plaintiff's pendant state law claims pursuant to 28 U.S.C. 1367.

Defendants are subject to personal jurisdiction in this district on account of the contractual arrangement with Plaintiff – an Oregon business – and because many pertinent facts giving rise to the dispute occurred in Oregon. *See Allstream*, 2021 WL 3488086, at *3 (stating contractual relationship in a state provides it with personal jurisdiction). Finally, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events at issue giving rise to this claim occurred in this District.

In addition, Plaintiff satisfied the procedural requirements for entry of a default judgment under Rules 55(a), 55(b), and 54(c). This Court properly entered default against Defendants under Rule 55(a), ECF 11, and Plaintiff's requested default judgment does not differ in kind or exceed the remedy pleaded in the Complaint. Compl. p. 8; FED. R. CIV. P. 54(c). Larson was personally served and served as the registered agent of IBC. ECF 7-8 (affidavit of service). Defendants did not appear personally or by a representative and they are not entitled to written notice of the application for default judgment. FED. R. CIV. P. 55(b); *Allstream*, 2021 WL 3488086, at *4. Accordingly, all procedural requirements for a default judgment are satisfied.

## II.    *Eitel* **Factors**

Finding procedural compliance, this Court now turns to Plaintiff's Motion for Default Judgement, first considering whether discretion should be exercised to enter a default judgment under the *Eitel* factors.

### A.    **Prejudice**

The first *Eitel* factor favors Plaintiff, who will be prejudiced if default judgment is not entered, as it does not have another way to resolve its claim against Defendants. *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) ("[W]here a

defendant's failure to appear makes a decision on the merits impracticable, if not impossible, entry of default judgment is warranted.") (Internal quotations omitted).

### B.    Pleading Claims for Relief

The second and third *Eitel* factors "require that a plaintiff state a claim on which [it] may recover" and are often analyzed together. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002); *Allstream*, 2021 WL 3488086, at *5. The Court must consider whether the allegations in the complaint state a claim that supports the relief sought.

#### 1.    Breach of Contract

Plaintiff seeks default judgment against Defendants on its breach of contract claim. To demonstrate a breach of contract, Plaintiff must prove (1) a contract existed; (2) the relevant terms of the contract; (3) its full performance and lack of breach; and (4) defendant's breach resulting in damages to plaintiff. *See Olmstead v. ReconTrust Co., N.A.*, 852 F. Supp. 2d 1318, 1322 (D. Or. 2012) (stating elements of breach of contract claim). Here, Plaintiff fails to specify the relevant contract terms. Specifically, there is no allegation that the contract required a return of documents upon termination of IBC's services. Furthermore, Plaintiff fails to allege whether the contract was between Plaintiff and IBC or Plaintiff and Larson – or both. *See Greenleaf Auto Repair, LLC v. Ideal Auto Works, LLC*, 318 Or. App. 865, 867 (2022) (affirming dismissal where "the complaint fails to allege facts that would support that Crosse, rather than the LLC of which she is a member, is a party to the contract."). Accordingly, Plaintiff failed to state a claim for breach of contract.

#### 2.    Trade Secrets

Both the Oregon Uniform Trade Secrets Act ("OUTSA"), Or. Rev. Stat. 646.461 *et. seq.*, and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. 1836 *et. seq.*, require the Plaintiff to

show "(1) the information was in fact a trade secret, (2) plaintiff took reasonable measures to maintain the secrecy of the information, and (3) defendant's conduct constitutes misappropriation." *Isosceles Holding, LLC v. All. Env't Grp.,* LLC, No. 3:23-CV-01004-AN, 2023 WL 4947866, at *11 (D. Or. Aug. 3, 2023). The DTSA defines trade secrets as "all forms and types of financial, business, scientific, technical, economic, or engineering information." 18 U.S.C. § 1839(3). The OUTSA defines a trade secret as any information such as "cost data, customer lists, formula, pattern, compilation, program, device, method, technique or process" that derives actual or potential independent economic value from not being generally known to the public. Or. Rev. Stat. § 646.461(4). Under both statutes, misappropriation includes the disclosure, use, or acquisition "of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." 18 U.S.C. § 1839; Or. Rev. Stat. § 646.461(2).

Here, Plaintiff alleges that "Defendants have taken Plaintiff's . . . operating financial and budget information, revenues and expenditures records, grant/donor information, contractor and employee tax information and records and data including names and addresses and social security numbers, and Plaintiff's protected confidential and proprietary company information." Compl. ¶ 17. These documents are included within the definition of "trade secrets" under OTUSA and DTUSA, and Plaintiff alleges multiple steps taken to secure this information, including seeking its return. Compl. ¶14. Although Plaintiff does not allege that Defendants used the information, they do allege that it was acquired by improper means, which is sufficient. Accordingly, Plaintiff has stated a claim under OUTSA and DTSA.

### 3. Tortious Interference with Economic Relations

"To state a claim for tortious interference with economic relations, plaintiff must allege facts that, if taken as true, establish: (1) the existence of a professional or business relationship; (2) intentional interference with that relationship; (3) *by a third party*; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and damage to the economic relationship; and (6) damages." *Silkett v. Royal Crown Cola Bottling Co. of N. Bend*, 151 Or. App. 187, 189–90 (1997) (emphasis added) (citing *McGanty v. Staudenraus*, 321 Or. 532, 535 (1995)). Here, there is no allegation that a third party was involved. This is a dispute between Plaintiff and Defendants. Accordingly, Plaintiff cannot state a claim for tortious interference with economic relations.

### 4. Conversion

"Conversion is the intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Allison v. Dolich*, 321 Or. App. 721, 731 (2022). "[A] person exercises dominion or control when the interference deprived the other party of the right to their property." *Id*. "When a defendant acquires possession of a chattel lawfully, . . . a conversion may result upon the refusal to redeliver the chattel on demand by the owner." *Leibrecht v. Hawkins*, 83 Or. App. 396 (1987).

Here, Plaintiff alleges that Defendants seriously interfered with its right to its tax and accounting information, thereby depriving them of their right to that property, and causing harm. Although Defendants may have initially had lawful possession of Plaintiff's documents, their failure to return those documents to Plaintiff amounted to conversion. Moreover, Plaintiff alleges that both IBC and Larson withheld those documents, and Larson may be liable in tort for her

Page 9  - FINDINGS AND RECOMMENDATION

own acts and omissions. *See Cortez v. Nacco Material Handling Grp.*, 356 Or. 254, 268-69 (2014). Accordingly, Plaintiff states a claim for conversion against Larson and IBC.

### C.    Sum of Money at Stake

Under the fourth *Eitel* factor, the Court must balance the sum of money at stake in relation to the seriousness of the defaulting party's conduct. *PepsiCo*, 238 F. Supp. 2d at 1176; *see also Walter v. Statewide Concrete Barrier, Inc.*, No. 04-cv-02559-JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2016) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted."). Here, Plaintiffs request a relatively small sum of money compared to the serious nature of Defendants' conduct in withholding Plaintiff's documents. The fourth factor weighs in favor of Plaintiff.

### D.    Disputed Facts

The fifth *Eitel* factor considers the possibility that material facts are disputed. *PepsiCo*, 238 F. Supp. 2d at 1177. As to Plaintiff's conversion claim, there are no apparent factual disputes as to whether Defendants seriously interfered with Plaintiff's right to its tax and accounting information. *PepsiCo*, 238 F. Supp. 2d at 1177. The fifth factor weighs in favor of Plaintiff.

### E.    Excusable Neglect

The sixth *Eitel* factor is whether the default was due to excusable neglect. *Eitel*, 782 F.2d at 1472. Defendants were served with the Complaint, yet the Defendants failed to respond. There is no sign that Defendants' default resulted from excusable neglect. The sixth factor weighs in favor of Plaintiff.

### F.    Judgment on the Merits

The seventh *Eitel* factor reminds the Court that judgment on the merits is preferred over judgment by default. *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009).

Courts recognize, however, that "this preference, standing alone, is not dispositive." *PepsiCo*,

238 F. Supp. 2d at 1177. Despite this, when a party completely fails to respond, a decision on the

merits is impracticable, and default judgment is warranted. *Craigslist*, 694 F. Supp. 2d at 1061.

This factor is either neutral or favors default judgment.

In short, the Court finds that six of the *Eitel* factors support entering a default judgment

and default judgment should be entered against Defendants.

## II.    Damages, Attorneys Fees, and Costs

Finding that a default judgment is appropriate, this Court now turns to the amount of

damages, attorneys fees, and costs that should be awarded.

### A.    Damages

In its complaint, Plaintiff initially sought $140,000.00 in compensatory damages. Compl.

p. 8. In moving for default judgment, however, Plaintiff sought only $10,000.00 in compensatory

damages. ECF 19 (hearing). This Court does not accept as true the complaint's allegations of

damages. *TeleVideo Sys.*, 826 F.2d at 917-18. Accordingly, this Court held a hearing on the issue

of damages. ECF 19.

At the hearing, Plaintiff's executive director, Stensrud, testified that her best estimate was

that Defendants expended at least $10,000.00 "in employee time and resources to attempt to

obtain the documents and information, track down the missing information, respond to questions

and demands from employees for the missing documents and information, and attempts to

recreate the missing documents and information to the extent possible from other sources."

Stensrud Decl.; ECF 19 (hearing). Stensrud calculated this time based on the estimated time

spent by four staff members, including Stensrud, addressing issues caused by Plaintiffs actions,

and the salaries of those staff members. ECF 19. Plaintiff also spent $32,000.00 to conduct a

Page 11  - FINDINGS AND RECOMMENDATION

third-party audit, which was due, at least in part, to the need to recreate some of the missing data. ECF 19.

Based on this testimony, Plaintiff has submitted evidence that it expended "at least $10,000" in employee time and resources to track down the information wrongfully withheld by Defendants. This calculation, though imprecise, was supported by the testimony of Plaintiff's executive director and was conservative conserving the harm alleged to Plaintiff's business and employee relations. In addition, Plaintiff submitted evidence that at least some portion of $32,000.00 it spent to retain a third-party audit team was due to the need to recreate the information that was missing due to Defendants' actions. Accordingly, this Court concludes that Plaintiff is entitled to the $10,000.00 in compensatory damages it seeks.

### B.    Attorney Fees

Next, Plaintiff seeks $4,987.50 in attorney fees. Plaintiff asserts that it is entitled to fees "[p]ursuant to the [OTUSA and DTSA]." Mot. 3. Both statutes provide for attorney fees to the prevailing party if the trade secret was willfully or maliciously misappropriated. *See* 18 U.S.C.A. § 1836(b)(3)(D) ("[I]f . . . the trade secret was willfully and maliciously misappropriated, [the court may] award reasonable attorney's fees to the prevailing party."); Or. Rev. Stat. 646.467 ("The court may award reasonable attorney fees to the prevailing party if: (3) Willful or malicious misappropriation is found by the court or jury.").

This Court finds that attorney fees are appropriate because IBC and Larson willfully misappropriated the trade secrets. Plaintiff alleges that Larson and IBC's actions in withholding and misappropriating the documents was "intentional, malicious, and retaliatory towards Plaintiff because Plaintiff chose to end IBC and Larson's bookkeeping services." Compl. ¶9. In addition, Stensrud testified at the hearing that IBC and Larson's actions were willful retaliation for the

Page 12  - FINDINGS AND RECOMMENDATION

decision to terminate her contact. ECF 19 (hearing). Accordingly, the misappropriation was willful and an award of attorney fees is appropriate.

This Court also concludes that the amount of fees is reasonable. Reasonable attorney fees are not assumed or sum certain in default judgment cases but must be shown as usual using the lodestar method. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1159 (9th Cir. 2018) "([T]he court is obliged to calculate a 'reasonable' fee in the usual manner," i.e., the lodestar method). The lodestar method multiplies the number of hours reasonably spent on the litigation and a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking an award of attorney fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Similarly, the fee applicant has the burden of proving that the requested hourly rate is reasonable. *See Camacho v. Bridgeport Fin. Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

Plaintiff initially sought $2,320.00 in attorney fees for 5.8 hours of work performed by attorney Heather Van Meter at a rate of $400 per hour. Van Meter Dec., ECF 13, ¶¶2-3. Ms. Van Meter also spent another 4.3 hours of time, at a rate of $425 per hour, from the filing of the motion for default judgment through the date of the hearing. Van Meter Supp. Dec., ECF 21, Ex. A.[2] As a result, Plaintiff now request an additional $1827.50 in attorney fees. Status Report, ECF 20. Ms. Van Meter's billing statements demonstrate that she effectively and efficiently litigated this action. Based on the 2022 OSB Economic Survey, her $400 and $425 hourly rates are near the average rates for experienced civil practitioners in Oregon. Utilizing the loadstar

---

[2] Plaintiff does not specifically identify Ms. Van Meter's hourly rate for the time spent from the filing of the motion for default judgment through the date of the hearing. However, her billing statements indicate that her hourly rate was $425.

method, this Court finds that it is reasonable to award $4,147.50 in attorney fees to Plaintiff based on the time incurred to date.

Plaintiff also seeks an additional $2000.00 in anticipated attorney fees, alleging that IBC appears to have ceased operations and Larson may have moved out of state. Van Meter Dec. ¶5. Counsel for Plaintiff anticipates "the need to domesticate this judgment in Alaska and pursue collection efforts, and expect to spend at least five (5) additional hours at my previously-honored $400 per hour rate for this client, for a total of an additional $2,000.00 in fees to hopefully collect on this judgment." *Id*.

There is limited authority to support Plaintiff's request for anticipated collection costs. *See Aguirre v. Custom Image Pros LLC,* No. CV-23-00334-PHX-MTL, 2023 WL 5932805, at *4 (D. Ariz. Sept. 12, 2023) (concluding Plaintiff was entitled to anticipated attorney fees resulting from collection efforts on a default judgment); *King v. Neverstill Enterprises, LLC*, Multnomah County Circuit Court Case No. 0707-08392, 2011 WL 7573949 (Or. Cir. Oct. 05, 2011) (awarding "anticipated post-judgment collection related litigation fees and expenses in the sum of up to $2,000.00, the exact amount of which will be determined by this Court upon request by defendants."). Even if anticipated collection costs are recoverable, however, the Court declines to do so here. An award of such costs is speculative given the lack of information presented concerning Defendants exact location, financial status, and ability to pay the judgment. *Ramos v. Probuilds LLC*, No. CV2301111PHXSMMDMF, 2024 WL 1078078, at *9 (D. Ariz. Feb. 26, 2024), *report and recommendation adopted*, No. CV-23-01111-PHX-SMM, 2024 WL 1071204 (D. Ariz. Mar. 12, 2024) (declining to award anticipated collection costs when the amounts were speculative).

In sum, Plaintiff should be awarded $4,147.50 in attorney fees actually incurred, but should not be awarded any anticipated collection costs.

**C.    Costs**

Plaintiff seeks to recover $402 in costs incurred due to the filing fee for this action. Mot. 4. Plaintiff is entitled to recover filing fees under 28 U.S.C. § 1920(1). Accordingly, Plaintiff is entitled to recover $402.00 in costs.

## RECOMMENDATION

Judgement should be entered in favor of Plaintiff and against Defendants for $10,000.00 in damages, $4,147.50 in attorney fees, and $402.00 in costs.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from Service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED June 3, 2024.

_____
ANDREW HALLMAN
United States Magistrate Judge